UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KATHLENE MARCHELE SMITH,            )
                                    )
            Plaintiff,              )
                                    )
v.                                  )            No. 3:14-CV-363-PLR-HBG
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security,  )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of the Plaintiff's Motion for Judgment Based Upon

the Administrative Record and Memorandum in Support [Docs. 16 & 17] and the Defendant's

Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22].  Kathlene

Marchele Smith ("the Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner

of Social Security ("the Commissioner").

On October 14, 2008, the Plaintiff filed an application for supplemental security income

("SSI"), claiming a period of disability which began July 20, 2007.   [Tr. 252-53].  After her

application was denied initially and upon reconsideration, the Plaintiff requested a hearing.  [Tr.

203-04].  On August 14, 2012, a hearing was held before the ALJ to review determination of the

Plaintiff's claim.  [Tr. 68-134].  On February 15, 2013, the ALJ found that the Plaintiff was not

disabled.  [Tr. 8-32].  The Appeals Council denied the Plaintiff's request for review [Tr. 1-5];

thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on July 30, 2014, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since October 14, 2008, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant's "severe" impairments have been a non-epileptic seizure disorder, history of asthma and migraine headaches (20 CFR 416.920(c)).
>
> 3. The claimant has not had an impairment or combination of impairments that has met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. Since her alleged disability onset date, the claimant could perform a full range of work at all exertional levels, but should not climb ladders, ropes or scaffolds, should have no more than occasional exposure to pulmonary irritants (such as fumes, odors, dusts, gases, and poor ventilation) and should avoid any exposure to workplace hazards (such as unprotected heights, moving machinery, and open flames).
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. As she was born on February 28, 1988, the claimant was 20 years old, which is defined as a younger individual not younger than eighteen or older than forty-nine, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education with the

ability to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering her age, education, work experience, and residual functional capacity, jobs that the claimant could perform have existed in significant numbers in the national economy (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 14, 2008, the date the application was filed (20 CFR 416.920(g)).

[Tr. 19-24].

## II.   DISABILITY ELIGIBILITY

This case involves an application for SSI benefits. To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

3

vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

4

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v.

5

Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes

v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v.

Richardson, 441 F.2d 1230 (6th Cir. 1971)).


## IV.    POSITIONS OF THE PARTIES

On appeal, the Plaintiff alleges three assignments of error committed by the ALJ.  First,

the Plaintiff argues that the ALJ erred in finding that the Plaintiff did not meet Listings 11.02

and/or 11.03.  [Doc. 17 at 11-22].  Second, the Plaintiff contends that the ALJ failed to give the

opinion of the Plaintiff's primary care provider, Timothy D. Tobitt, N.P., controlling weight and

further argues that Mr. Tobitt's opinion qualified as an opinion from an "acceptable source."  [Id.

at 5-11].  Lastly, the Plaintiff maintains that the ALJ erred in finding that she had the residual

functional capacity ("RFC") to perform a full range of work at all exertional levels (with certain

limitations), particularly the exertional levels of medium work and greater, given the Plaintiff's

gender and weight.  [Id. at 3-5].

The Commissioner counters that the entirety of the ALJ's decision supports his finding at

step three that the Plaintiff's impairment does not meet or equal Listings 11.02 or 11.03, and that

the ALJ's reliance on medical expert testimony offered by Woodrow W. Janese, M.D., supports

the ALJ's finding.  [Doc. 22 at 4-9].  In addition, the Commissioner argues that the ALJ properly

considered Mr. Tobitt's opinion, which qualified as an opinion from an "other source" rather

than an "acceptable medical source."  [Id. at 9-11].  Finally, the Commissioner asserts that the

ALJ's RFC determination is supported by substantial evidence and that the Plaintiff's gender and

body habitus is not relevant to the determination of a claimant's RFC.  [Id. at 11-13].

6

The Plaintiff filed a reply, arguing that Dr. Janese's testimony is not sufficient to constitute substantial evidence as his testimony is inconsistent with the medical evidence and is contrary to the opinion offered by Mr. Tobitt which was made part of the administrative record following the hearing. [Doc. 23 at 2-3]. The Plaintiff also maintains that while the ALJ mentioned Mr. Tobitt's opinion, the ALJ failed to state whether the opinion was considered in reaching his decision and what weight, if any, the opinion was given. [Id. at 3-6].

V. **ANALYSIS**

The Court will address the Plaintiff's allegations of error in turn.

A. **Listings 11.02 and 11.03**

The Plaintiff contends that her impairment satisfies the criteria of Listings 11.02 and 11.03. In this regard, the Plaintiff mainly challenges the ALJ's reliance on medical expert testimony offered by Dr. Janese during the administrative hearing.

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that her impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. Walters, 127 F.3d at 529; Foster v. Halter, 279 F.3d 348, 352 (6th Cir. 2001). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §416.925(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to meet a listing. Id. "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in

7

severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493

U.S. 521, 531 (1990) (emphasis in original). The claimant has the burden of establishing that her

impairment meets or equals a listed impairment. Walters, 127 F.3d at 529.

In determining whether an impairment is of listing level severity, the ALJ is tasked with

comparing the medical evidence of record with a listing's requirements. Reynolds v. Comm'r of

Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Notably, our appellate court in Bledsoe v.

Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006) rejected "a heighted articulation standard" with

regard to the ALJ's step three finding. Specifically, the Bledsoe Court implicitly endorsed the

practice of looking at the entirety of the ALJ's decision for statements and cited reasons as to

why the claimant's impairment does not meet a listing. See id. (finding that "[t]he ALJ did not

err by not spelling out every consideration that went into the step three determination" because

"[t]he ALJ described evidence pertaining to all impairments, both severe and non-severe . . . five

pages earlier in his opinion and made factual findings" and also "explicitly stated that he

considered the combination of all impairments even though he did not spell out every fact a

second time under the step three analysis").

Under Listing 11.02 *Epilepsy—convulsive epilepsy*, (grand mal or psychomotor), seizures

must be "documented by detailed description of a typical seizure pattern, including all associated

phenomena." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02. Further, seizures must occur more than

once a month and "in spite of at least 3 months of prescribed treatment[.]" Id. Similarly, under

Listing 11.03 *Epilepsy—nonconvulsive epilepsy* (petit mal, psychomotor, or focal), seizures must

be "documented by detailed description of a typical seizure pattern, including all associated

phenomena; occurring more frequently than once weekly in spite of at least 3 months of

prescribed treatment." Id. at 11.03. To satisfy 11.03, seizures should include "alteration of

8

awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." Id. The Listings instruct that the "degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures . . . Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." Id. at 11.00(A). The Listings also make clear that 11.02 and 11.03 will only apply "if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy." Id. The Listings instruct that "[e]valuation of the severity of the impairment must include consideration of the serum drug levels." Id. In this regard, "[s]hould serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance." Id.

Here, the ALJ relied on the hearing testimony of medical expert Dr. Janese in concluding that the Plaintiff's impairment did not meet Listings 11.02 or 11.03. [Tr. 20]. During the hearing, after summarizing the medical evidence, Dr. Janese opined that the Plaintiff did not meet Listings 11.02 or 11.03 because of multiple low-levels or nontherapeutic levels of antiepileptic drugs ("AEDs"), negative EEGs, negative examinations, negative MRIs, and a non-conclusive diagnosis demonstrated by non-epileptic epilepsy. [Tr. 111-114]. Dr. Janese recommend that the Plaintiff's RFC include seizure precautions such as no exposure to open machinery, heights, and open flames. [Tr. 114]. He also suggested a possible restriction against driving but noted that the Plaintiff did not have a driver's license. [Id.].

In response to questioning by Plaintiff's counsel, Dr. Janese expounded upon the basis of his opinion further. Dr. Janese stated that emergency room records from September 2008 instructed the Plaintiff to take her medication "as directed" which was not an ordinary precaution given to all patients. [Tr. 115]. Dr. Janese explained that based upon a longitudinal review of the Plaintiff's medical history which demonstrated multiple subtherapeutic levels of AEDs, the instruction could be assumed to mean that the Plaintiff was not taking her medication as directed. [Id.]. Additionally, Dr. Janese found it odd that the Plaintiff's AED levels ranged from subtherapeutic to extremely toxic, because it took eight days to get a therapeutic level and eight days to reduce it. He was unsure how the Plaintiff's AED levels could reached toxic levels unless she was taking too much medication. [Tr. 116].

Dr. Janese then characterized the Plaintiff's numerous seizure related hospitalizations since 2007 as "quite unusual," finding that the Plaintiff's complaints were subjective and not substantiated by any objective evidence. [Tr. 117]. In this regard, Dr. Janese pointed out that numerous EEGs performed on the Plaintiff returned normal and that while the Plaintiff's treating neurologist, Sadik Yesil, M.D., noted that normal EEGs did not necessarily rule out a diagnosis of epilepsy, Dr. Janese explained that only about 20 percent of people who have seizures have normal EEGs. [Tr. 117]. Dr. Janese further opined that it was "pretty rare" in the Plaintiff's case for all her EEGs to return normal given that she has been hospitalized 52 times since 2007 for alleged seizure activity. [Tr. 117]. When questioned about Plaintiff's primary care provider, Mr. Tobitt, purportedly witnessing the Plaintiff's seizure activity, Dr. Janese remarked that Mr. Tobitt's treatment note from April 29, 2010, states, "Seizures: Two witnessed episodes," failed to specify who actually witnessed the episodes. [Tr. 120]. In an effort to demonstrate that the Plaintiff's seizure activity had indeed been witnessed by a medical professional, Plaintiff's

10

counsel cited to another portion of the record in which Dr. Yesil noted that the Plaintiff "had 1 slight seizure yesterday" during an April 2008 hospital stay. [Tr. 125]. Dr. Janese remarked, however, that if the Plaintiff were having abnormal cortical or subcortical seizure activity, an EEG should have, but did not, confirm as much. [Tr. 124].

At step three in the disability determination, the ALJ concluded that Dr. Janese's testimony was consistent with the medical evidence, and adopted his finding that the Plaintiff's impairment did not meet Listings 11.02 or 11.03. [Tr. 20]. The ALJ provided no further discussion on the matter. The Plaintiff argues that "[t]he ALJ never specifically addressed Listing 11.02 or Listing 11.03" and cites a host of medical records that demonstrates that the Plaintiff satisfied the Listings' criteria. [Doc. 17 at 12-22]. The Plaintiff contends that the ALJ's reliance on Dr. Janese's testimony does not constitute substantial evidence because his testimony is inconsistent with the medical evidence of record.[1] [Doc. 23 at 2]. The Commissioner argues that courts are free to examine all of the ALJ's findings throughout the decision that may support the ALJ's step three analysis. [Doc. 22 at 5-6]. In doing so, the Commissioner submits that other portions of the disability determination, including the ALJ's later discussion of Dr. Janese's testimony, records from other treatment providers, and the Plaintiff's daily living activities, all provide substantial evidence explaining the ALJ's step three finding. [Id. at 6-9].

The Court finds that substantial evidence does not support the ALJ's ultimate conclusion

[1] The Plaintiff additionally argues that Dr. Janese's testimony is inconsistent with evidence that was submitted after the administrative hearing, namely Exhibits 18E and 37F through 43F. After the hearing, these additional records were sent to Dr. Janese along with a one page Medical Interrogatory that contained four questions. [Tr. 1647]. Of relevance, Interrogatory 4 asked, "Based on your review of all the Exhibits in the E and F Section, does this information change your medical opinion given during the hearing on August 14, 2012? *If yes, please explain in detail.*" [Id.] (emphasis added). Dr. Janese responded, "No." [Id.]. The Plaintiff argues that Dr. Janese must have meant "Yes" because marginal notes were made at the bottom of the page under the question. [Docs. 17 at 10-11 & 23 at 2-3]. These marginal notes, which are also scribbled at the top of the page, are vague notations that appear to be made by Dr. Janese for his own personal reference in answering the questions. Dr. Janese unequivocally answered "No" to Interrogatory 4, and the ambiguous marginal notes in no way provide a "detailed explanation" that Interrogatory 4 warrants if the question were answered "Yes."

11

that the Plaintiff's impairment does not meet or equal Listings 11.02 or 11.03. The Court agrees with the Plaintiff that Dr. Janese's testimony, which served as the sole basis for the ALJ's step three finding, is not consistent with the medical evidence of record.

For example, Dr. Janese discounted the severity of the Plaintiff's impairment because she had high levels of AEDs which could be presumed to mean that she was taking too much medication. The ALJ acknowledged during the RFC portion of the decision that while the record failed to set forth a clear instance corroborating Dr. Janese's suspicion, treatment records from May 24, 2008, in which the Plaintiff was diagnosed with respiratory failure due to the administration of a large amount of benzodiazepines, made Dr. Janese's belief that the Plaintiff was taking too much of her Dilantin (seizure) medication "not improbable." [Tr. 22]. However, an affidavit filed by the Plaintiff's primary care provider, Mr. Tobitt, on August 17, 2012, details the difficulty the Plaintiff has historically encountered in controlling her AED levels, through no fault of her own. [Tr. 1638-41]. The affidavit explains that due to the variances in the Plaintiff's Dilantin levels, efforts have been made to help regulate her medication, including pill counts and treatment with neurologist Gregory A. Kersulis, M.D., which began in July 2010. [Tr. 1639-40]. Dr. Kersulis introduced Topamax into the Plaintiff's medication regimen which proved to be effective as the Plaintiff reported in December 2010 a decrease in seizure activity. [Tr. 1487-88]. Although the Plaintiff was found to be compliant with her medication while under Mr. Tobitt's care, Mr. Tobitt related that the Plaintiff nonetheless continued to experience seizures and that she "is one of the unfortunate individuals that fall into the category of idiosyncrasies in absorption or metabolism of the medication sufficient to control her seizures activity, which is something beyond her control." [Tr. 1641].

The Listings require that when "serum drug levels appear therapeutically inadequate,

12

consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(A). The ALJ does not appear to have taken this factor under consideration as he did not provide any assessment of Mr. Tobitt's opinion. Instead, the ALJ relied upon Dr. Janese's conclusory assumption that the Plaintiff's toxic levels could only be explained by medication non-compliance.

Dr. Janese further discounted the severity of the Plaintiff's seizures, finding that the Plaintiff's complaints were subjective and not substantiated by objective evidence. Dr. Janese particularly noted that while Mr. Tobitt's April 29, 2010 treatment note documented two witnessed episodes of seizure activity, the seizures were not actually observed by Mr. Tobitt. Mr. Tobitt's August 17, 2012 affidavit, however, clarifies that he, along with his staff, indeed witnessed the episodes which Mr. Tobitt characterized as convulsive activity accompanied by body shaking, loss of consciousness, loss of muscle control with arm-drift testing being positive, and positive for bladder incontinence. [Tr. 534, 1639]. Similarly, while hospitalized in April 2008, Dr. Yesil noted that the Plaintiff was observed having a seizure during her hospital stay. [Tr. 652]. Furthermore, other hospitalization records document seizure activity while in the presence of medical personnel. [Tr. 513, 653-65, 667, 1279, 1305, 1643].

Despite purported seizure activity being witnessed by medical personnel, Dr. Janese continued to express skepticism of witness accounts because time and time again, EEG activity returned normal. [Tr. 124]. The Court observes, however, that the Technical Revisions to Medical Criteria for Determinations of Disability, published April 24, 2002, removed the requirement for EEG documentation under the neurological body system listings. 67 FR 20018-01, 2002 WL 661740, at *20019 (Apr. 24, 2002) ("With the exception of nonconvulsive epilepsy

13

in children, we will no longer require that an EEG be part of the documentation needed to support the presence of epilepsy."). The revision explains that the EEG requirement was discarded because it is rare for an EEG to confirm epilepsy in adults . Id. Indeed, treating providers Mr. Tobitt and Dr. Yesil agreed that normal EEG results did not rule out a seizure disorder in the Plaintiff's case. [Tr. 534, 538, 567, 1640]. Moreover, Dr. Yesil diagnosed the Plaintiff with complex partial seizure with secondary generalization throughout his course of treatment with the Plaintiff in 2007 through 2008 despite normal EEG and MRI results [Tr. 521-26, 528-533], which is also contrary to Dr. Janese's observation that the Plaintiff suffers from non-epileptic epilepsy. Therefore, the Plaintiff's normal EEG findings do not preclude her from satisfying the Listings.

Based upon the foregoing, the Court finds that Dr. Janese's testimony conflicts with other substantial evidence in the record. Specifically, the foregoing discussion demonstrates that the record contains medical evidence and witness observations describing the Plaintiff's seizure activity, that such activity persisted (at least to some degree) despite purported compliance with anticonvulsant medication, and that in Mr. Tobitt's opinion, the Plaintiff suffered from idiosyncrasies in absorption or metabolism of her medication which explained the variances in her AED levels. To be clear, the Court does not propose that the evidence of record conclusively or overwhelming suggests that the Plaintiff meets or equals Listings 11.02 and/or 11.03. Rather, the Court finds that the ALJ's reliance on Dr. Janese's testimony, without any meaningful discussion of the Listings' criteria or why Dr. Janese's testimony was found reliable despite seemingly contradictory evidence, fails to substantiate the ALJ's step three finding.

While the Court is cognizant that there is no "heighted articulation standard" and the ALJ may consider the severity of an impairment elsewhere in his opinion to serve as further

14

explanation for his step three finding, see Bledsoe, 165 F. App'x at 411, the Court finds that a generous reading of the ALJ's entire decision is not enough to save his step three finding in this case. The evidence relied upon by the ALJ in the RFC portion of the decision, although relevant to the overall discussion of the severity and impact of the Plaintiff's seizure disorder, fails to sufficiently explain the inherent conflicts between Dr. Janese's testimony and other substantial evidence noted herein. Moreover, the ALJ summarily relied upon Dr. Janese's testimony, not the evidence cited in the RFC portion of the decision, to make his step three determination.

Accordingly, the Court finds that the Plaintiff's claim in this regard is well-taken. The Court will recommend that this case be remanded for reconsideration of whether the Plaintiff's impairment meets or medically equals Listings 11.02 and/or 11.03. The Court further notes that due to the Plaintiff's lengthy and complex medical history, a medical opinion from a "treatment source," *i.e.*, a licensed physician with whom the Plaintiff has an ongoing treatment relationship, would be more than instructive in this case. See Social Security Ruling 87-6, 1987 WL 109184, at *2 (Jan. 1, 1987) (noting the necessity of a "treatment source" for a sound determination under Listings 11.02 and 11.03 and explaining that "[t]here must be a constant treating source to whom the patient turns for advice and treatment, especially when seizure control wavers").

### B.     Opinion of Timothy D. Tobitt, NP

Next, the Plaintiff argues that the ALJ failed to properly consider and give controlling weight to Mr. Tobitt's opinion as expressed in his April 29, 2012 affidavit. [Doc. 17 at 6]. In the disability determination, the ALJ found that Mr. Tobitt was not an "acceptable medical

source" pursuant to 20 C.F.R. § 416.913(a)[2]. [Tr. 16 n.1]. The Plaintiff contends that the ALJ's finding is incorrect, and argues that a "nurse practitioner's opinion alone is considered an 'acceptable source'"[3], and that as such, the ALJ should have given the opinion controlling weight under the framework of 20 C.F.R. § 416.927(c)(2)[4], [Doc. 17 at 6-7], commonly referred to as the "treating physician rule." The Plaintiff further contends that in this case, the ALJ was silent as to whether Mr. Tobitt's opinion was considered at all in reaching a decision and consequently failed to state the weight assigned to the opinion. [Doc. 23 at 3].

The Commissioner argues that Mr. Tobitt is considered an "other source" under the regulations, and as such, his opinion was not entitled to the same level of deference as opinions provided from "acceptable medical sources." [Doc. 22 at 9]. Further, the Commissioner contends that "other sources" cannot establish the existence of an impairment but "their perspective should be given weight by the adjudicator and should be 'evaluated on key issues such as impairment severity and functional effects.'" [Id. at 10] (quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *3 (Aug. 9, 2006)).

As a threshold matter, the Court finds that Mr. Tobitt is not an "acceptable medical source." The regulations make clear that "acceptable medical sources" only include licensed

---

[2] The Court notes that the Plaintiff's brief interchangeably cites to 20 C.F.R., Part 404, which relates to the provisions of title II benefits of the Social Security Act, and Part 416, which relates to the provisions of title XVI benefits of the Social Security Act. While the cited language in both parts of the regulations are identical, this case only deals with title XVI benefits. Therefore, the Court will only cite to Part 416 of the regulations.

[3] The Plaintiff's reference to "acceptable source" is confusing in that it is unclear whether she is arguing that Mr. Tobitt is an "acceptable medical source" as defined in 20 C.F.R. § 416.913(a), or whether she is simply arguing that Mr. Tobitt is qualified under the regulations to provide opinion evidence regarding the Plaintiff's impairment. The Plaintiff appears to concede that nurse practitioners fall under the regulation's definition of "other sources." [See Docs. 17 at 6 & 23 at 6]. However, she continues to argue that Mr. Tobitt is a "treating source," whose opinion qualifies as a "medical opinion" and must be assessed for "controlling weight," which are legal terms of art used under the treating physician rule, 20 C.F.R. § 416.927(c). Therefore, the Court will treat the Plaintiff's contention as an argument that Mr. Tobitt is an "acceptable medial source" as defined by the regulations, whose opinion should have been weighed as such.

[4] In her brief, the Plaintiff actually cites to subsection (d) to argue that Mr. Tobitt's opinion was entitled to "controlling weight." This subsection, however, deals with opinions on issues reserved for the Commissioner. Subsection (c) sets forth the requirements for evaluating medical opinions from treating sources.

physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). Only "acceptable medical sources" can provide evidence establishing an impairment. Id. Nurse practitioners, on the other hand, are considered "other sources." § 416.913(d). "Other sources" may provide evidence as to the severity of a claimant's impairment as well as the effects the impairment has on the claimant's ability to work, id., but they "cannot establish the existence of a disability," Engebrecht v. Comm'r of Soc. Sec., 572 F. App'x 392, 398 (6th Cir. 2014).

In the instant case, there is no dispute that Mr. Tobitt is a nurse practitioner. [See Tr. 1638]. Therefore, Mr. Tobitt is an "other source." See McNamara v. Comm'r of Soc. Sec., 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of "other sources."); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007) ("As a nurse practitioner, Hasselle is listed under "other [non-medical] sources."). Accordingly, the ALJ did not err in finding that Mr. Tobitt did not qualify as an "acceptable medical source."

The Court further finds that as an "other source," Mr. Tobitt's opinion was not subject to any special degree of deference. See Meuzelaar v. Comm'r of Soc. Sec., No. 15-2341, 2016 WL 2849305, at *2 (6th Cir. 2016) (holding that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an "acceptable medical source"); Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 248-49 (6th Cir. 2015) ("The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record.") (citations omitted). The Plaintiff attempts to argue that 20 C.F.R. § 416.927(c)(2) "mandates" that Mr. Tobitt's opinion be given controlling weight because Mr. Tobitt is a "treating source"

17

whose opinion qualifies as a "medical opinion," is "well-supported," and is "not inconsistent" with other substantial evidence. [Doc. 17 at 7]. Putting aside the lack of support accompanying the Plaintiff's conclusory statements, her argument fails for a different reason. A "treating source," in addition to being one who provides, or has provided, medical treatment or evaluation to a claimant on an ongoing basis, must be a "physician, psychologist, *or other acceptable medical source*." 20 C.F.R. § 416.902 (emphasis added). Similarly, "medical opinions," which reflect judgments about the nature and severity of a claimant's impairment, are "statements from physicians and psychologists *or other acceptable medical sources*." § 416.915 (emphasis added). As an "other source," Mr. Tobitt neither qualified as a "treating source," nor was his opinion a "medical opinion." See Jones v. Soc. Sec. Admin., No. CIV. 3:13-1204, 2015 WL 1235039, at *6 (M.D. Tenn. Mar. 17, 2015) (observing that nurse practitioners, and "other sources," are not "qualified to render medical opinions"); Hatfield v. Astrue, No. 3:07-CV-242, 2008 WL 2437673, at *2 (E.D. Tenn. June 13, 2008) ("Accordingly, a nurse practitioner's opinion, as 'other source' evidence, is not given the same controlling weight as a 'treating source.'"). Therefore, Mr. Tobitt's opinion was not entitled to controlling weight. See Engebrecht, 572 F. App'x at 399 ("As an 'other source' opinion, Hastings' opinion is not entitled to controlling weight, nor is the ALJ required to give reasons for failing to assign it controlling weight, as that requirement only applies to treating sources.") (citing Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010)).

While the regulations suggest that evidence from "other sources" may be used to help evaluate a claimant's impairment, the regulations are silent as to how "other source" evidence should be evaluated. Social Security Ruling 06-03p provides guidance in this regard. The Ruling instructs that opinions from "other sources" are "important and should be evaluated on

18

key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 WL 2329939, *3. The Ruling further states that the factors listed in 20 C.F.R. 416.927(c)(2), which are used for evaluating "medical opinions," remain guiding principles for determining the weight that should be given to opinions from "other sources." Id. These factors include: the frequency of examination, the consistency of the opinion with other evidence, the amount of relevant evidence supporting the opinion, the source's area of expertise, and any other relevant factor that supports or refutes the opinion. Id. at 4-5. However, not every factor need be weighed; the particular facts of each case will dictate which factors are appropriate for consideration in order to properly evaluate the opinion at hand. Id. at 5.

The Ruling also provides guidance in regard to how an ALJ should explain the ALJ's consideration of "other source" evidence. Id. at 6. Because the regulations instruct that all relevant evidence should be considered, the ALJ's opinion "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources.'" Id. at 6. Of particular significance, the Ruling carefully points out that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain." Id. The ALJ "generally *should* explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. (emphasis added). This District has observed that Sixth Circuit case law "appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight, as opposed to leaving the decision whether to explain to the ALJ's discretion." Hatfield v. Astrue, No. 3:07-CV-242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541-42 (6th Cir. 2007)).

19

Here, the ALJ's decision recognizes that Mr. Tobitt is the Plaintiff's primary care provider who treated the Plaintiff for seizures, among other ailments. [Tr. 16-17]. The ALJ also discussed Mr. Tobitt's affidavit, observing that the Plaintiff was reported to have difficulty controlling her Dilantin levels despite medication compliance, that a referral was made to Dr. Kersulis for an evaluation of the Plaintiff's seizures, and that it was in Mr. Tobitt's opinion that the Plaintiff fell into the category of idiosyncrasy in the absorption or metabolism of the medication sufficient to control her seizures. [Tr. 17]. The ALJ, however, did not explain whether, or how, Mr. Tobitt's opinion factored into the disability determination, and the ALJ did not assign the opinion any particular weight. Because Mr. Tobitt was the Plaintiff's primary care provider and his opinion reflects key information regarding the severity and effects of the Plaintiff's impairment, which could certainly impact the outcome of the case, the Court finds that the ALJ's decision does not comport with the requirements of Social Security Ruling 06-03p and such failure is reversible error. The Court observes that the Commissioner does not explicitly address the ALJ's failure to evaluate and weigh Mr. Tobitt's opinion but does concede, generally, that opinions from "other sources" "should be given weight" and "should be evaluated on key issues." [Doc. 22 at 10]. Accordingly, the Court finds that it was incumbent upon the ALJ to fully and fairly address Mr. Tobitt's opinion in making a disability determination in this case.

Therefore, the Plaintiff's allegation of error is well-taken to the extent that the Court finds that the ALJ did not properly evaluate or weigh Mr. Tobitt's opinion pursuant to Social Security Ruling 06-03p. On remand, the Court recommends that the ALJ: (1) weigh Mr. Tobitt's August 12, 2012 affidavit; (2) provide an explanation of the weight assigned; and (3) explain what effect, if any, it has on his overall decision.

## C.    RFC Determination

Lastly, the Plaintiff argues that the ALJ erred in finding that the Plaintiff had the RFC to perform a full range of work at every exertional level, with certain seizure precaution limitations. [Doc. 17 at 3]. The Plaintiff takes particular issue with the ALJ's finding that she can perform the lifting requirements of medium exertional work or greater given her gender and weight. [Id.]. She additionally argues that her seizures, which occur without warning and would result in missing more than one day a month of work, preclude her from performing any job. [Id.].

Having concluded that a remand is necessary in order for the ALJ to reevaluate Listings 11.02 and 11.03, as well as Mr. Tobitt's opinion, the Court finds this assignment of error is not ripe for review. The issues on remand will necessitate reconsideration of the Plaintiff's RFC by default. The Court notes, however, that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Accordingly, "[i]t is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms." Id. (noting that body habitus, for example, is *not* a factor in assessing an individual's RFC). Therefore, the Plaintiff's argument with regard to the impact her weight and gender have upon her RFC is misplaced.

21

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[5] that the Plaintiff's Motion

for Judgment Based Upon the Administrative Record [**Doc. 16**] be **GRANTED IN PART** and

the Defendant's Motion for Summary Judgment [**Doc. 21**] be **DENIED**.  Upon remand, the

Court RECOMMENDS that the ALJ:

1. Reconsider whether the Plaintiff's seizure disorder meets or medically equals Listings

   11.02 and/or 11.03;

2. Obtain an opinion from a treating source, to the extent available, on the frequency,

   severity, and functional impact of the Plaintiff's epileptic disorder; and

3. Weigh Mr. Tobitt's August 12, 2012 affidavit pursuant to Social Security Ruling 06-03p,

   by providing an explanation of the weight assigned and explain what effect, if any, the

   opinion has on the ALJ's overall decision.

Respectfully submitted,

*Bruce Guyton*

United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140 (1985).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).